**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NEW YORK STATE TEAMSTERS CONFERENCE**
**PENSION AND RETIREMENT FUND, by its Trustees**
**John Bulgaro, Gary Staring, Ronald G. Lucas,**
**Daniel W. Schmidt, James M. Tucker, Thomas K. Wotring,**
**J. Dawson Cunningham and Michael S. Scalzo, Sr.,**

                              **Plaintiffs,**

v.                                                 5:05-CV-1395
                                                               (NAM/GJD)

**LINDEN MOTOR FREIGHT CO., INC.**

                              **Defendants.**
_____

**APPEARANCES:**                                         **OF COUNSEL:**

Paravati, Karl, Green & DeBella                  Peter P. Paravati, Esq.
12 Steuben Park
Utica, New York 13051-2992
For Plaintiffs

**Norman A. Mordue, Chief U.S. District Judge**

## DEFAULT JUDGMENT AND ORDER OF REFERRAL

## INTRODUCTION

     Plaintiffs New York States Teamsters Conference Pension and Retirement Fund ("Pension Fund") and its Trustees bring this action alleging that defendant Linden Motor Freight Co., Inc., was party to a collective bargaining agreement which required defendant to make contributions to the Pension Fund on behalf of its employees. According to the complaint, however, defendant permanently ceased all covered operations under the employee benefit and multiemployer pension plan ("the Plan") the Pension Fund sponsored. The Pension Fund determined that defendant completely withdrew from the Plan and assessed defendant a withdrawal liability in the

amount of $6,210,295.44 and notified defendant of its obligation to make interim monthly payments in the amount of $98,363.41, beginning on July 19, 2004, until it satisfied the full amount of the withdrawal liability.  Defendant has failed to make the interim payments and is therefore in default in violation of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1399(c)(2) and (5).[1]  Plaintiffs move for default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and seek judgment against defendant for all past due interim withdrawal liability payments and a permanent injunction directing payment of all prospective interim payments together with an award of interest, interest or liquidated damages, and attorneys' fees and costs.

## DISCUSSION

### *Standard – Default Judgment Rule 55(b)*

Under Rule 55(b) of the Federal Rules of Civil Procedure, default judgment shall be entered if a defendant has failed to plead or otherwise defend an action."  *Parise v. Riccelli Haulers, Inc.*, 672 F.Supp. 72, 74 (N.D.N.Y. 1987).  Rule 55(b)(2) and Local Rule 55.2 set forth the procedural prerequisites plaintiffs must meet before their motion for default judgment may be granted.  Plaintiffs must: (1) properly serve defendant with a summons and complaint (to which no response has been made); (2) obtain an entry of default; and (3) provide an affidavit setting forth the facts required by L.R. 55.2(a), including an affidavit showing that defendant is not an infant or incompetent, or in the military service.  *See* Fed. R. Civ. P. 55(b)(2); N.Y.N.D.L.R. 55.1 and 55.2.

---

[1]On September 26, 1980, Congress amended the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, by enacting the MPPAA, 29 U.S.C. § 1381 *et seq.*

Plaintiffs filed the complaint on November 8, 2005, and served defendant on December 5, 2005. On April 3, 2006, plaintiffs received a Clerk's Entry of Default. In connection with their motion for default judgment, plaintiffs have submitted an affidavit by their counsel showing that defendant is not an infant or incompetent, and is not in the military service. Therefore, plaintiffs have fulfilled the procedural prerequisites for default judgment and defendant has not appeared in this action or opposed the present motion. Accordingly, the Court turns to liability.

*Liability*

"A party's default is deemed to constitute a concession of all well-pleaded allegations of liability." *Resolution Trust Corp. v. Forney*, No. 91-CV-0414E(F), 1993 WL 261415, at *1 (W.D.N.Y. Jun. 28, 1993) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty*, 973 F.2d 155, 158 (2d Cir. 1992)). The allegations in plaintiffs' complaint are therefore presumed accurate.

Under the MPPAA, when an employer permanently ceases covered operations under a pension plan into which it is required to make contributions, the employer is subject to "withdrawal liability," "for its proportional share of the plan's unfunded vested benefits". 29 U.S.C. § 1381. After an employer withdraws from a plan, the plan's trustees must determine the amount of withdrawal liability, *id*. §§ 1382(1), 1391, notify the employer of the liability, provide a payment schedule, and demand payment. *Id*. §§ 1382(2), 1399(b)(1). Although an employer may request a review of any matter relating to the determination of the employer's liability or the schedule of payments, *id*. § 1399(b)(2)(A), or challenge the determination by demanding arbitration, *id*. § 1401(a)(1), the employer must begin making interim withdrawal liability payments within sixty days of notice and demand for payment. *Id*. at § 1399(c)(2).

Here, according to the complaint, defendant withdrew from the Plan by ceasing to have an obligation to contribute to the Plan and/or ceasing all covered operations under the Plan. The Pension Fund determined that defendant incurred a withdrawal liability in the amount of $6,210,295.44. In a letter dated May 18, 2004, the Pension Fund notified defendant of the amount of the withdrawal liability and demanded payment. The Pension Fund also notified defendant that it was required to make monthly interim payments in the amount of $98,363,41, and demanded the first payment within sixty days. Defendant requested review of the Pension Fund's assessment of the withdrawal liability and demanded arbitration contesting the assessment. Defendant, however, has failed to remit any interim withdrawal liability payments. Therefore, defendant's conduct as alleged in the complaint stands in violation of the MPPAA. *New York State Teamsters Conference Pension and Ret. Fund ex rel. Bulgaro v. Doren Avenue Assocs., Inc.*, 321 F.Supp.2d 435, 440 (N.D.N.Y. 2004) ("Regardless of whether an employer requests review from the sponsor, or initiates arbitration proceedings, it is responsible for paying interim withdrawal liability payments in accordance with the payment schedule set forth in the notice.") (citing 29 U.S.C. § 1399(c)(2)).

### *Damages*

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The Court "must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id*.

4

In this case, plaintiffs have submitted a number of documents which they claim show the damages they sustained as a result of defendants' conduct as well as their entitlement to a permanent injunction. The facts and documents in this regard, however, are introduced through the affidavit of plaintiffs' counsel, who does not purport to have personal knowledge. Thus, there is insufficient evidence on which to enter the amount of damages, *see id*. at 154-55 (finding there was insufficient evidence on which to enter the amount of the judgment because "[a]t the time judgment was entered, the court had before it only the allegations in the complaint and the affidavit of plaintiff's counsel, who did not purport to have personal knowledge of the facts, asserting an amount of damages sustained by plaintiff as a result of defendant's failure to deliver the securities."), or a permanent injunction. Accordingly, this matter is hereby referred to the Honorable Gustave J. DiBianco, United States Magistrate Judge, for the purpose of conducting a hearing, or soliciting documentary evidence, pursuant to Rule 55 of the Federal Rules of Civil Procedure to take an account or to determine the amount of plaintiffs' damages and to prepare and forward to the undersigned a Report and Recommendation regarding the type and amount of such damages upon which he determines plaintiffs are entitled to have judgment entered.[2] The Report and Recommendation should also address plaintiffs' request for a permanent injunction.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that in view of default by defendants in failing to answer the Complaint or make any appearance in this matter and the Clerk of the Court having entered default by defendants on April 3, 2006, and no appearance or objection having been made by defendants

---

[2] There is evidence in admissible form regarding attorneys' fees. The Court will, however, refrain from calculating any award at this time and will instead await a Report and Recommendation from Magistrate Judge Lowe on this issue.

5

since that time, plaintiffs' motion for default judgment against defendants is **GRANTED**; and it is further

**ORDERED** that this matter is referred to the Honorable Gustave J. DiBianco for the purpose of conducting a hearing, or soliciting documentary evidence, pursuant to Rule 55 of the Federal Rules of Civil Procedure to take an account or to determine the amount of plaintiffs' damages; and it is further

**ORDERED** that this matter is referred to Magistrate Judge DiBianco for the purpose of making proposed findings of fact and conclusions of law regarding plaintiffs' application for a permanent injunction; and it is further

**ORDERED** that Magistrate Judge DiBianco shall thereafter prepare and forward to the undersigned a Report and Recommendation regarding the type and amount of such damages upon which he determines plaintiff is entitled to have judgment entered, and proposed findings of fact, conclusions of law, and recommendation for the disposition of plaintiffs' application for a permanent injunction.

**IT IS SO ORDERED.**

DATE: November 21, 2006

Norman A. Mordue
Chief United States District Court Judge